## CALVIN CHEAIRS et al. *v.* LEMUEL SMITH et al.

1. WILLS: PROVISION TO EMANCIPATE: HOW IT AVOIDS THE WILL.—A provision in a will for the emancipation of slaves does not avoid the whole will as to distinct and independent provisions, not connected with the illegal purpose to emancipate; the will is void only as to the slave or slaves thereby attempted to be emancipated.

2. SAME: CONDITIONS SUBSEQUENT: BEQUEST OVER.—Where the will gives a present estate to the devisee or legatee, to be defeated on his failure to perform certain acts therein required of him, such performance is a condition subsequent; nor is this changed by the fact, that the estate is limited alternately to another on the failure of the original devisee or legatee to perform the condition. See 1 Jarm. on Wills, 801; 1 Roper Leg. 513.

3. SAME: BEQUEST ON VOID CONDITION WHERE LEGATEE IS NOT A MERE TRUSTEE.—The general rule is, that a bequest upon a void condition vests the estate in the legatee discharged of the condition; but if the legatee be a mere trustee to carry out the void condition, and it do not appear that the testator intended he should have any beneficial interest in the estate, then there is a resulting trust to the heir. See *Weathersby* v. *Weathersby*, 13 S. & M. 685.

APPEAL from the Court of Probates of Marshall county.   Hon. B. G. Lawrence, judge.

A full statement of the case will be found in the opinion of the court.

*Watson, Craft,* and *Fort,* for appellants.

The testator made his will, and died, after the 1st of November, 1857, the time when the Revised Code took effect; and therefore, the law which governs the case, is that found in the New Code, 236, sec. 3, art. 9, as follows: " It shall not be lawful for any person, either by will, deed, or other conveyance, directly or in trust, either express or secret, or otherwise, to make any disposition of any slave or slaves for the purpose or with the intent to emancipate such slave or slaves in this State; or to provide that such slaves be removed to be emancipated elsewhere, or by any evasion or indirection so to provide that the Colonization Society, or any donee or grantee, can accomplish the act, intent, or purpose designed to be prohibited by this article.   Nor shall it be lawful for any executor,

trustee, donee, legatee, or other person under any pretence whatever, to remove any slave or slaves from this State with the intent to emancipate such slave or slaves. But all such wills, deeds, conveyances, dispositions, trusts, or other arrangements, made, had or intended to accomplish the emancipation of any slave or slaves after the death of the owner, no matter when made, shall be deemed and held entirely null and void, and the said slave or slaves thereby attempted or intended to be emancipated, shall descend to and be distributed among the heirs at law of the testator, grantor, or owner, or otherwise disposed of, as though such testator, grantor, or owner, had died intestate."

The prohibition contained in the law, it is submitted, affects the will in question only so far as the slaves Pillow and Mary are concerned. These are the only slaves which the will requires to be emancipated ; and as to which, therefore, the will is in conflict with the declared policy of the State. It is true, it was contended by counsel, and held in the court below, that the clause of the statute, " but all such wills, deeds, conveyances, dispositions, trusts or other arrangements, made, had, or intended to accomplish the emancipation of slaves after the death of the donee, no matter when made, shall be deemed and held entirely null and void," not only annulled the will, so far as it provided for the emancipation of Pillow and Mary, but the whole of the residuary clause which prescribes this illegal condition. That clause is in these words : " All the residue of my estate, both real and personal, not herein particularly disposed of, I give and bequeath to my nephew Lucius, son of Calvin Cheairs, on the uses and trusts following, to wit : I will that my mulatto boy Pillow, and girl Mary, are to be free, and are to have five hundred dollars each when they arrive at the age of eighteen years ; that they are to remain under the care of my brother Calvin until Lucius shall be of age ; that they are never to leave the family, nor be subject to the control of overseers ; and that Mary be made a seamstress, and Pillow a barber."

This clause, it will be seen, looking to the agreed facts, includes and disposes of, in addition to Pillow and Mary, for whose freedom provision is made, a valuable tract of land, a considerable personal estate other than slaves, and about thirty slaves. Now, as to this land and personalty, including the thirty slaves, the law certainly

will not be violated should the will be sustained.   The operation of the law should not be made more than coextensive with the mischief designed to be remedied.   The mischief to be prevented was the emancipation of slaves, and in the present case this mischief is prevented by holding the will void as to Pillow and Mary, they being the only slaves who would be emancipated, should the will be upheld and executed.   Moreover, the law makes a disposition of the property, so far as it defeats, or intended to defeat, any will ; and on this subject its language is thus definite : " The said slave or slaves thereby attempted or intended to be emancipated shall descend to, and be distributed among, the heirs at law of the testator, grantor, or owner, or otherwise disposed of, as though such testator, grantor, or owner had died intestate."

The error of the court below is clearly illustrated by this case.

If the general residuary clause of this will is held void, the part devising lands, and that bequeathing slaves and other personalty, as well as that part which directs the emancipation of Pillow and Mary, must it not follow, that upon the same principle the distinct and substantive specific bequests of the slaves, Edmund, Emily, Elizabeth, and Taylor, and also the pecuniary legacies contained in the will, are also illegal and void ?   Indeed, if the general language of the statute, " but all such wills, deeds, conveyances, dispositions, trusts, or other arrangements, made, had, or intended to accomplish the emancipation of any slave or slaves, after the death of the owner, no matter when made, shall be deemed and held entirely null and void," is to be literally carried out, then, it must be held, that the decedent is wholly intestate.   But this general language is to be construed in connection with the context ; and from the different clauses of the statute, all taken together, the true intent and meaning of the legislature are to be ascertained.   And looking to the whole act, it is submitted that it was manifestly the intention of the legislature to leave wills in full force and effect, except so far as they might attempt to introduce the mischief against which the legislation is directed.   In support of this view of this subject, I refer the court to the case of the *Mayor and Aldermen of Savannah, &c.* v. *The State of Georgia,* 4 Georgia, 26 ; 19 Ib. 237, 247 ; 21 Ib. 21, 39, 40.   The 17th section of the Constitution of Georgia is in these words : " Nor shall any law or or-

dinance pass containing any matter different from what is expressed in the title thereof." An act was passed containing matter not expressed; and it was contended that the whole of the act was unconstitutional and void. The Supreme Court decided, however, that "so much of the statute only as contains matter different from what is expressed in the title thereof, will be void." See also *Brown* v. *Beatty*, 34 Miss. R. 228.

That the will in question is illegal and void, so far as the attempted emancipation of Pillow and Mary is concerned, is admitted; and it may also be true that the court below correctly held, that, as to Pillow and Mary, the decedent was to be regarded as having died intestate; but still the question remains, what is the legal effect of the residuary clause of the will as to the property and slaves which it embraces, exclusive of Pillow and Mary?

If the foregoing be the true construction of the statute, the real question involved in the case is, do the "uses and trusts" on which the testator makes Lucius Cheairs his residuary devisee and legatee, constitute a condition precedent or subsequent? As they are illegal, if these "uses and trusts" constitute a condition precedent, no estate or interest vested under the residuary clause, and the decree of the court below is correct. But if a condition subsequent, then the interest given by the residuary clause did vest, and remains as absolute as if no condition had been imposed. 2 Blackstone's Com. ch. 10, p. 154–6–7; 1 Lomax's Cruise's Dig. title 11, ch. 1, p. 263, §§ 8, 9 (1st ed.); 1 Roper on Legacies, 749–50, 783–4; Keyes on Chattels, §§ 30, 287; *Weathersby* v. *Weathersby*, 13 S. & M. 685; *Barksdale* v. *Elam*, 30 Miss. 694; 2 Strobhart Eq. 208; 25 Maine, 201–208; 2 Williams on Executors, 908.

"There are no technical appropriate words which always determine whether a devise be on a condition precedent or subsequent. The same words have been determined differently, and the question is always a question of intention. If the language of the particular clause, or of the whole will, shows that the act on which the estate depends must be performed before the estate can vest, the condition is of course precedent; and unless it be performed, the devisee can take nothing. If, on the contrary, the act does not necessarily precede the vesting of the estate, but may accompany or follow it, if this is to be collected from the whole will, the con-

dition is subsequent." *Finley* v. *King*, 3 Peters, 374–5; *Burnet* v. *Strong & Burnet*, 26 Miss. 116.

The question is, whether the testator intended that a compliance with the requisition, which he has chosen to annex to the enjoyment of his bounty, shall be a condition of its acquisition or merely of its retention. 1 Jarman on Wills, 796–7 (side).

If the act or condition required does not necessarily precede the vesting of the estate, but may accompany or follow it, and if the act may be as well done after as before the vesting of the estate, or if from the nature of the act to be performed, and the time required for its performance, it is evidently the intention of the parties that the estate shall vest and the grantee perform the act after taking possession, the condition is subsequent. *Underhill* v. *S. & W. R. R. Co.* 20 Barbour, 455 ; 16 U. S. Dig. 128, § 5 ; *Beck* v. *Montgomery*, 7 How. Miss. 39 ; *Hayden* v. *Inhabitants of Stoughton*, 5 Pickering, 528 ; *Marwick* v. *Andrews*, 25 Maine, 525.

For an example of a condition precedent, see *West and wife* v. *Moor*, No. 8559, decided by this court, April term, 1859.

A condition precedent is one which must take place or be performed before the estate can vest. Subsequent conditions are those which operate upon estates already created and vested, and which render them liable to be defeated. *Daniel* v. *Jacoway et al.* Freeman's Ch. R. 59, 63. Tested by the foregoing principles, the condition on which the decedent makes his nephew, Lucius Cheairs, his residuary legatee and devisee, is manifestly a condition subsequent. There are no trustees interposed in this case, and in this particular it is different from that of *West and wife* v. *Moor*. The words to be construed are *in presenti*,—" All the residue of my estate, both real and personal, not herein particularly disposed of, I give and bequeath to my nephew Lucius, son of Calvin Cheairs." " It will be sufficient to make the condition subsequent; if the testator appear, from the contents of his will, to have intended an immediate interest, to pass to the object of his bounty." 1 Roper on Legacies, 766. The legal effect of the language of the will certainly must be to vest the estate in Lucius, and the condition then added, " on the uses and trusts following, to wit," is one which, if legal, would operate upon an estate already created and vested, and which would render it liable to be defeated. Pillow and

Mary are to remain under the care of the testator's brother Calvin, until Lucius, the beneficiary, shall be of age; but no title to Pillow and Mary even passes to Calvin Cheairs; and there is nothing in the whole will postponing the vesting of the title in Lucius, the beneficiary to all the property which the residuary clause of the will embraces. Pillow was only in his tenth, and Mary in her twelfth year when the will was made, as will be seen by reference to the agreed facts in the case, and their emancipation was not to occur until they respectively attained the ages of eighteen years. This condition then was not intended by the testator to be performed until some years subsequent to his death, and in the meantime, he expected and desired that his nephew Lucius would be clothed with the title to, and would be in the enjoyment of, the estate he had given him. Pillow and Mary were to remain under the care of another until Lucius attained age, and were not to leave the family, or be subject to the control of overseers; and Mary was to be made a seamstress, and Pillow a barber. Now these directions as to Pillow and Mary, had the will been throughout a legal one, could not have been performed until after the estate, given by the residuary clause of the will, had vested. The title to Pillow and Mary passed by the same language by which the title to the other property contained in the residuary clause passed; and title to and possession of Pillow and Mary were indispensable to a compliance with the directions of the will, so far as they are concerned. And thus it is most manifest, that the vesting of the estate in this instance was a necessary condition precedent to the performance of the condition on which Lucius Cheairs was made the residuary legatee and devisee of the testator; and not that the performance of the said condition was a condition precedent to the vesting of the estate. Subsequent conditions are such, by the failure or non-performance of which an estate already vested may be defeated. 2 Blackstone, 154. And that the testator regarded the estate as vesting in Lucius under his will, subject to be defeated, is farther apparent from that clause in his will in which he says:

" Now, if my nephew Lucius and his father shall do with the boy Pillow and the girl Mary as herein willed and expressed, the gift to him of my estate, as above specified, to be good and absolute; but should they fail or not comply with my request, the property so

bequeathed to the said Lucius shall be equally divided between the heirs of Lemuel Smith and David B. Cheairs, they paying to the said Pillow and Mary the five hundred dollars, as before specified.

And also from the clause following:

"If my nephew Lucius dies before he becomes of age, then the property given and bequeathed to him shall go to my nephew William, son of Calvin Cheairs, upon the same conditions as to my nephew Lucius."

It is clear that even a devise over, upon a contingency, has not the effect of preventing the legacy from vesting in the meantime; provided the words of bequest be in other respects sufficient to pass a present interest. 1 Roper on Legacies, 601.

"If a legacy be given to A., payable at twenty-one or marriage; but if he marry under that age, without the consent of executors, then to C., the legacy will vest immediately in A., and the condition is subsequent." 1 Roper on Legacies, 766.

A devise of land "for the purpose of building a schoolhouse, for the use of a school, provided it be built" on a certain site, is a condition subsequent. *Hayden* v. *Stoughton*, 5 Pick. 528. The cases of *Popham* v. *Barnfield*, and *Peyton* v. *Bury*, quoted in 1 Jarman on Wills, 801, 802 (side page), are authorities which fully sustain the foregoing views. The case of *Weathersby* v. *Weathersby*, 13 S. & M. 685, is also an authority directly in point, and which, it is submitted, controls the present case. There the clause of the will, which, it was decided, created a condition subsequent, was in these words:

"I give and bequeath to my son Ludovick, my servants Tom and Lucy, and their children, Matilda, Sylvester, Andrew, and Dicey, in trust and under the following conditions," which conditions the court held to be illegal and void; but being a condition subsequent, the court say the "consequence is that the trust or condition is defeated, and the estate is absolute in the legatee." 13 S. & M. 687, 688.

Here the terms of the will are: "All the residue of my estate, both real and personal, not herein particularly disposed of, I give and bequeath to my nephew Lucius, son of Calvin Cheairs, on the uses and trusts following, to wit:" &c., which uses and trusts are the future emancipation of two of the slaves included in the bequest.

Thus it will be seen that the terms of the will in the case of *Weathersby* v. *Weathersby*, are in substance and effect identical with the terms of the will now to be construed.

The case of *Barksdale* v. *Elam*, 30 Miss. 694, is another authority fully sustaining that view of this case on which appellant relies. There Barksdale claimed three slaves and some other property, under a deed which conveyed them to him on condition that he emancipated one of the three slaves, the deed providing in express terms, that if Barksdale "fails to comply with the above conditions," he shall forfeit his right to the property; meaning the two slaves and the other property which were conveyed by the deed, on the illegal condition, of the emancipation of the third slave. In this case the court says, "It may be conceded for the sake of argument that every duty which the deed attempts to impose on the donee, and every condition annexed thereto, must be treated as absolutely void; yet under the authority of the case of *Weathersby* v. *Weathersby*, 13 S. & M. 685, the donee's title is not affected by such void conditions. He takes the property discharged from the conditions, supposing them to be void."

The case of *Lusk* v. *Lewis, Administrator*, 32 Miss. R. 297, does not overrule, but affirms the principle involved in the foregoing cases of *Weathersby* v. *Weathersby*, 13 S. & M. 685, and *Barksdale* v. *Elam*, 30 Miss. 694. Lusk bequeathed his slaves to trustees in trust for the American Colonization Society, and the court properly held this bequest not to have been for the personal benefit of the trustees, or to the Colonization Society for any purpose but that of the emancipation of the slaves; and this trust being ineffectual, as against the policy of the law, it was held further, that there was a resulting trust to the heir; that a bequest of slaves in trust to secure their freedom, contrary to law, being void, the next of kin will take, or there will be a resulting trust to the testator, or donor, or his executor. By the will of Lusk as construed by the court, there was virtually a direct bequest of freedom to his slaves, and therefore the will fell within the prohibition of the statute, and was void, and the slaves, in pursuance of the statute, "descended to, and were to be distributed amongst, the heirs at law of the testator, or be otherwise disposed of, according to law, in the same manner as if such testator had died intestate." The correctness of the prin-

ciple involved in this decision, was distinctly recognized in *Weathersby* v. *Weathersby*. The court there holding that, " if there had been a direct bequest of freedom to these slaves they would have been subject to distribution as if no will had been made."

In *Lusk* v. *Lewis, Administrator*, the court say :

" The case of *Weathersby* v. *Weathersby*, 13 S. & M. 685, is urged in support of the individual claim of the trustees in this case. That was a bequest, by a father, of slaves to his son, in trust and upon condition, that the slaves should be maintained as free persons. It was treated as an estate upon condition subsequent ; and the condition being void, the estate was held to be absolute in the legatee.

" It is possible that the circumstances of that case might be regarded as showing some benefit intended to be conferred upon the son by the bequest, and that it was not a case of mere trust, beyond which the trustee was not intended to have any interest. So regarded, the decision may stand upon sound principle ; but it cannot be extended further."

Now, it is respectfully submitted that the foregoing extract from the opinion of the court in *Lusk* v. *Lewis, Administrator*, covers fully and is decisive of the present case. That the testator, Cheairs, intended by his will to confer a substantial benefit upon his nephew and legatee, Lucius Cheairs, and that the case was not intended by the testator to be one of mere trust, beyond which the trustee was to have no benefit, is clearly manifest. Of the many slaves included in the residuary bequest, the emancipation of two was intended ; but all the rest are bequeathed to the legatee. Here then we have presented the very state of facts, which the court say in *Lusk* v. *Lewis* was supposed to exist in *Weathersby* v. *Weathersby ;* and so regarding that case, the court adds, " the decision may stand upon sound principle."

On the authority of *Weathersby* v. *Weathersby*, and *Barksdale* v. *Elam*, it is submitted, that Lucius Cheairs takes the whole of the property embraced in the residuary clause of the will, including Pillow and Mary, exempted from the illegal uses and trusts prescribed ; or, if this is not so, that he at least takes all of said property, exclusive of Pillow and Mary, who descend to the testator's

heirs at law : and in either event, the decree of the court below is erroneous, and should be reversed.

*Walter* and *Scruggs*, for appellees.

We insist that the estate devised in the residuary clause of the will is on condition precedent, and is, therefore, void, and the estate goes to the heirs.

In determining this point, but little aid can be had from decided cases ; for the question, whether conditions are precedent or subsequent, is to be determined by the intent of the parties, as collected from the whole instrument. There are no technical words which will in themselves determine this point, as the same words have been differently construed in different instruments. *Burnett* v. *Strong*, 26 Miss. R. 116 ; *Barruso* v. *Madan*, 2 John. 146 ; *Gardiner* v. *Corson*, 15 Mass. 500 ; 3 Peters, 374 ; 6 Litt. 151.

Such being the case, we must look to the whole will in order to ascertain the intention of the testator. We insist that the whole residuum is given on not one, but several conditions, some, if not all, of which, are precedent. The first and important condition is, that the slaves are at once to be free. The language of the will is : " I will that my mulatto boy Pillow and girl Mary are to be free, and are to have five hundred dollars each when they arrive at the age of eighteen years." Freedom is secured at once, but the payment of the five hundred dollars is postponed. This is evident from other clauses : that they are to remain under the care of Calvin Cheairs, until Lucius reaches age ; that they are never to leave the family, nor be subject to the control of overseers ; and that they are to learn trades. It is most evident that freedom follows at once, that it is a condition precedent to the vesting or enjoyment of the estate, and that consequently the whole devise is void.

But we insist, further, that all the conditions in this will are to be performed before an estate is to vest.

1st. The negroes are to be freed; are to have $500 each; are to learn trades, all before the legatee can attain age. This whole duty is imposed on the father, as trustee, and he, being of full age, can accomplish it. And,

2d. The whole of the property is to remain in the hands of the executors, in order to raise the funds necessary to accomplish the

object of the testator. The duty of learning Pillow and Mary a trade, of paying them $500 each, of incurring the expense of providing for their support, all devolves upon the executor, and he might well resist a distribution of the estate to the legatee until all these objects are accomplished.

It is most evident that the testator believed the property would so remain in the hands of the legatee's father, until all the trusts were performed. This is evident from the fact that duties are devolved that could not well be performed by a minor, and that he has required them in part to be performed by the executor, and that in the last clause of the will he directs that either of his executors may execute the trust. This trust here means something more than the discharge of the duty of paying debts, &c. The will was drawn by an unprofessional man. He sanctions but one trust in the will,—the trust of freeing the negroes ; and in the last clause he must have meant this when he employs the word trust.

But upon this whole subject the testator has not for a moment left us in doubt, for he declares : "Now, if my nephew Lucius, and his father, shall do with the boy Pillow and the girl Mary as herein willed and expressed, the gift to him of my estate, as above specified, to be good and absolute; but should they fail, or not comply with my request, the property so bequeathed to said Lucius shall be equally divided," &c. In other words, if these conditions, which can all be accomplished in a short time, and before Lucius becomes of age, are not fulfilled, then he shall not even have a good estate. If, as contended for by appellants, an estate vested, on the death of the testator, in Lucius, how does it happen that the active control of it devolves on his father ? or that the father may defeat the entire estate by failure to comply with the conditions imposed ?

To show further that the testator supposed that the freedom of the slaves was to be immediate, and was immediate, he provides that if the other conditions of the will are not complied with, that Smith's heirs are required only to pay the $500. We insist that there are several conditions to this will, the principal one, however, being that of freedom, which is precedent to all others, and which is most prominent in the mind of the testator.

But whilst we admit that no mere technical words will determine

whether an estate is on condition precedent or subsequent, and that the intent must be consulted, yet there are some rules which will enable us to find that intent. We insist that a limitation over on failure to perform conditions, is one evidence that the testator regarded the condition as precedent. In the case of *Burnett* v. *Strong*, 26 Miss. 116, this court says: "It is evident from the entire clause of this will, and from the fact that no other disposition is made of this property in terms," that the condition is subsequent, clearly implying that had there been a limitation over, that it might have been different. And it has been so held in *Wheeler* v. *Bingham*, 3 Atk. 368; *Loyd* v. *Branton*, 3 Meriv. 118; 2 Mad. 350; 3 Peters, 374, 375; 7 Gill & John. 243; *Hanson* v. *Brawner*, 2 Md. R. 90.

We insist, again, that when we wish to ascertain whether a legacy is contingent from conditional words, that the words, as, if, in case of, provided, and when, will constitute, when not controlled by the context of the will, estates on condition precedent. 1 Roper on Legacies, 383, and authorities cited.

But again, even if this were a condition subsequent, we insist that there being a limitation over, that Lucius cannot take as residuary legatee, and the heirs must take.

Jarman on Wills, 807–8 (side paging), lays down the rule, that if the condition be subsequent and cannot be performed, the legatee shall not take if there be a limitation over. He insists, that if the court makes " the estate of the first devisee absolute, it would take the property from the substituted devisee, in an event in which the testator has given it to him." We most respectfully call the attention of the court to the rule laid down here, and ask its application to this case. Can it be possible that the testator in this case would have declared Lucius should be his legatee to the exclusion of others for whom the proof showed he had equal regard, if he had for a moment believed that Lucius would not perform his illegal bequest? We think not. But he leaves us in no doubt on this subject, for he wills that if Lucius does not do his unlawful behest, that the property shall go over to the others having equal favor in his eyes. If, therefore, this court makes the estate absolute in Lucius, " does it not take the property from the substituted devisees, in an event in which the testator has given it to them ?" This doctrine is recog-

nized in *Cleaver* v. *Spurling*, 2 P. Williams, 526; 2 Wms. Executors, 913.

The above rule is certainly recognized in cases of marriage settlements. 1 Jarman on Wills, 833 (side); 1 Story Eq. § 287, and notes and cases cited.

Conceding, for the purpose of the argument (none other), that the residuum is limited to Lucius on a subsequent condition, which is illegal, the testator has said that the estate must go over, if this illegal condition cannot be performed. The first receptacle held by Lucius is rotten; it goes over to the next receptacle, held by the heirs of Smith and Cheairs, which is also rotten; and it falls into the receptacle held by the heirs generally, which is solid and capable of holding. In the Lusk will case, 33 Miss. R., the Colonization Society held a bag not strong enough to hold the devise with the illegal accompaniment, and the estate then fell, without the accompaniment, into the receptacle held by the Educational and Missionary Societies, which were sufficient to hold it, and it rested there, there being no limitation over; but in the case at bar, each receptacle from the testator to the heirs is incapable of holding the estate with its illegal mass: until stripped of the latter, it falls to the heirs, who can hold. And it should fall there, because there is a limitation over, created by the testator himself, and it is immaterial whether the condition be precedent or subsequent. It might possibly (regarding the condition as subsequent) be different if there were no limitation over after Lucius.

If we are wrong in the preceding propositions, we rely on another, viz. : that where the material provisions of a will are illegal, and they cannot be separated from the other parts without defeating the testator's general scheme, the whole will be declared void, and the property be disposed of, as if the testator had died intestate. *Harris* v. *Clark*, 3 Selden R. 242; 1 Graham on Wills, 205; *Grieves* v. *Case*, 4 Bro. C. C. 67.

What was the "general scheme" of the testator? The emancipation and support of Mary and Pillow in this State, as free negroes. He declares this to be his scheme in the will, and in every part of it. It is manifested in his devise to them of money; in requiring them to remain forever in the family; in giving them trades; in freeing them from the control of overseers; in leaving his property

to others in the event that Lucius does not perform these conditions; and above all, in his declaration that he has the absolute right to make this particular kind of devise, and that no law, human or divine, shall change his purpose. The general scheme is manifest in every provision of the will; it is transparent; it is not the subject of inference, but is plainly declared by the testator himself. And the general scheme, thus apparent, is mixed up with the material provisions of the will, which cannot be separated from the other parts without defeating the general scheme, and the whole provision is void. The question here is, not whether the legal and illegal might possibly be separated, but can they be separated without defeating the general scheme? The testator has shown their indissoluble union in limiting the estate over, and still over, until it falls to the hands of one who will carry out his great scheme of freeing his slaves, and giving them a home in our midst as freemen. On this point we specially invite the attention of the court to the case of *Costar* v. *Lorillard*, 14 Wend. 265.

It is said, that this court has decided, in the case of *Weathersby* v. *Weathersby*, a provision precisely similar to that of this will, to be a condition subsequent. Not so. Freedom was not bequeathed in that case, as Judge Clayton (who delivered the opinion of the court), subsequently declared as counsel, *arguendo*, in the case of *Reid* v. *Manning*, 30 Miss. R. 808. But further; in the Weathersby case, the son was to furnish the slaves with a house, provide for their cultivating land, &c. &c., require of them reasonable service, and permit them to buy their children, &c., showing clearly that all acts and conditions were to be subsequent to the vesting of the estate.

If the case of *Barksdale* v. *Elam*, 30 Miss. R. 694, is defensible on principle at all, it must be on the ground, that Barksdale was to forfeit the estate on conditions to be performed long after the estate was to vest.

But counsel for appellants will rely, though not noticed in their printed brief, on the case in 2 Strob. Eq. R. 116.

But there, there was an estate for life, before the emancipation could take place as to part of the slaves; and as to others, they were to be the property of the remainderman for years before their freedom was to be secured, and everything in the will showed that

a complete and perfect estate was to vest in the remainderman, before he could do any act. The court held, under these circumstances, that the estate was on condition subsequent.

Again, appellants' counsel refer to the case of *Burnett* v. *Strong*, 26 Miss. R. 116, and *West* v. *Moore*, Opinion Book H. 112, as authorities supporting their position. In the first-mentioned case, the court said, that the words "shall have" the property "on his paying all he owes," &c., would certainly indicate a condition precedent, but the court looked to the further statements in the will, the circumstances of the parties and property, and properly held the condition to be subsequent; and in the latter case, the first clause of the will appeared to give a vested interest in the son, but the court looked to the whole will, and declared the estate was on condition precedent. We only ask that the same rules may be applied to the case at bar. The first clause may appear to give a vested interest to Lucius, but we respectfully submit that a careful reading of the will, and reference to the ages, relation of parties, limitations over, &c. &c., will show, that the testator never intended that he should have any interest in the estate until the conditions were performed.

But we insist that the whole will is a nullity. By the Act of 1842, Hutch. 539, the legislature provided, that it should not be lawful to make any devise of a slave for the purpose of emancipation, or for his removal from the State for emancipation elsewhere; but such slave should be distributed as in cases of intestacy. The Revised Code, 236, goes much further. It not only avoids the devise, but declares that all "wills, deeds, conveyances, dispositions, trusts, or other arrangements, had or intended to accomplish the emancipation of any slave," . . . "shall be deemed and held entirely null and void." It not only declares the specific devise, but the will itself, to be utterly void. For forty years the policy of the State has been adverse to emancipation. In 1842, it prohibited the devise, and made the bequest void; but citizens were found who were determined to disregard the law, and, therefore, to punish them, and to admonish the living, the State has declared that he who will make a will for this purpose, shall be considered intestate; that his will shall be wholly disregarded.

This is right. The normal condition of the African is servitude.

Slavery is his earthly paradise. Experience attests this truth, and vindicates its Divine authority. The man who will disregard this truth, and violate this law of Heaven, should be treated as an enemy to society, as *civiliter mortuus*, and as wholly incapable of making a valid testament. He is doing an injury to society. His act is calculated to unsettle the peculiar institutions that surround us. If the slave is once declared free he will never forget it, and, ignorant of the curse that freedom would entail on him, he will become restless and discontented, and ever remembering that his master declared him free, he will feel disposed to rebel against the authority of him whom the law proclaims to be his master. But again, if men of mistaken philanthropy are permitted to speculate on this subject, they will be tempted to disinherit their heirs, and postpone their kindred in favor of those whose mawkish sensibility, the testator may hope, will carry out his policy of emancipation, or in favor of those who promise so to do, for the bribe held out to them in a large legacy. The law forbids all this speculation, strikes at the root of the evil, declares the whole will void, and we earnestly invoke this court to sustain this law. We insist that the legislature has declared the whole will void, and that it is different from other laws declaring the gift, or devise, only void. See the case of *Norton* v. *Sims*, Hob. R. 53 (13 c.); *Doe* v. *Pitcher*, 6 Taun. 369; *Darlin* v. *Rogers*, 22 Wend. 490.

If wrong in this view, we insist that the residuary clause is at least void. The language of the statute is: "But all such wills, deeds, conveyances, dispositions, trusts, or other arrangements, made, had, or intended to accomplish the emancipation of any slave, shall be utterly null and void." The residuary clause of the will is a conveyance, disposition, and trust of property, intended to accomplish emancipation, and the whole is void. The property must go to the heirs, for there is no residuum.

We invoke the aid of the foregoing principles the more earnestly, as all fair intendments are to be made in favor of the heir. *Thomas* v. *Thomas*, 6 Term. R. 677; *Bender* v. *Deitrick*, 7 Watts. & Serg. 284; 2 Strob. 116.

Handy, J., delivered the opinion of the court.

This was a contest in the Court of Probates of Marshall county

between the heirs at law and distributees of William H. Cheairs, deceased, and the residuary legatee under the last will and testament of the said deceased, involving the validity of that will as to certain dispositions made in it in favor of the residuary legatee.

The will, after making bequests of certain specific legacies to certain relatives and friends, contains the following provisions:

" All the residue of my estate, both real and personal, not herein particularly disposed of, I give and bequeath to my nephew Lucius, son of Calvin Cheairs, on the uses and trusts following, to wit: I will that my mulatto boy Pillow and girl Mary are to be free, and are to have five hundred dollars each when they arrive at the age of eighteen years ; that they are to remain under the care of my brother Calvin until Lucius shall be of age ; that they are never to leave the family, nor be subject to the control of overseers ; and that Mary be made a seamstress, and Pillow a barber. I further will that the offspring of the girl Mary shall be free, and that my nephew Lucius shall take care of them during his lifetime. Now, if my nephew Lucius and his father shall do with the boy Pillow and the girl Mary as herein willed and expressed, the gift to him of my estate, as above specified, to be good and absolute; but should they fail and not comply with my request, the property so bequeathed to the said Lucius shall be equally divided between the heirs of Lemuel Smith and David B. Cheairs, they paying to the said Pillow and Mary the five hundred dollars as before specified. If my nephew Lucius dies before he becomes of age, then the property given and bequeathed to him shall go to my nephew William, son of Calvin Cheairs, upon the same conditions as to my nephew Lucius. Believing my right to dispose of my property as best suits me, to be absolute, I affirm that no law or equity shall set aside this my last will and testament;" and appointing Calvin Cheairs and James G. Hamer, his executors.

It was admitted of record by the parties, that the slave Mary named in the will is about thirteen years old, and the slave Pillow about eleven years old, and the legatee, Lucius, about fourteen years old. That the residuum of the estate consisted of seven hundred acres of land, and thirty-two slaves, exclusive of Mary and Pillow, and horses, mules, cattle, &c., the whole residuum being worth about $35,000; and that the testator left two brothers and

one married sister, all in good circumstances. One of these brothers and the sister filed the petition in the court below, alleging that the residuary clause of the will is illegal and void, because the trust thereby created was illegal and void, and the same was a condition precedent to the vesting of the estate in the residuary legatee. This was denied by the answers of the executors and the residuary legatee. And upon the hearing, the court sustained the petitioner and decreed distribution of the slaves and other personalty above-mentioned, including the slaves Mary and Pillow; holding the residuary clause of the will to be illegal and void; from which decree this appeal was taken.

It is admitted on the part of the appellants, that the bequest of emancipation to the slaves Mary and Pillow is contrary to the statute prohibiting emancipation of slaves in this State, and void; and consequently that those slaves remained the property of the testator's estate. But it is denied that this vitiates the entire residuary clause. In behalf of the appellees several objections are taken both to the will as a whole, and to the residuary clause, which deserve consideration.

And first, it is insisted that the will being illegal and void as to part of the slaves attempted to be emancipated in violation of the statute, falls under the condemnation of the statute as to all its provisions, and is void *in toto.*

This position is founded on the language employed in the statute, which, after declaring that it should not be lawful for any person by will, deed, or other conveyance, to make any disposition of any slave for the purpose of emancipation in this State, or for removal of any slave for emancipation elsewhere, concludes as follows: "But all such wills, deeds, conveyances, dispositions, trusts, or other arrangements, made, had, or intended to accomplish the emancipation of any slave or slaves, after the death of the owner, no matter when made, shall be deemed and held entirely void, and the said slave or slaves thereby attempted or intended to be emancipated, shall descend to, and be distributed among, the heirs at law of the testator, &c, as though he had died intestate." Rev. Code, 236, Art. 9. But we do not think that the view of the statute contended for, is sustained either by its language or the policy comprehended in it. The object of the statute is plain. It is to pre-

vent emancipations of slaves in this State, or the execution of instruments here to take effect out of the State as emancipations. There is nothing in it indicating an intention to subject the owner of the slave attempted to be manumitted, to a penalty or forfeiture, or to do more than to frustrate his attempt at emancipation. The policy on which the statute was founded comprehends only the illegal act intended to be prohibited, and does not extend to other acts embraced in the same instrument, and which are in violation of no law. And such an instrument should not be held illegal and void as to other matters embraced in it, which are in themselves legal, without language clearly showing that it was the intention of the statute to render the whole instrument void. For such a construction might operate to defeat the most just and wise dispositions of a testator's property, and to bring it into distribution for the benefit of parties in law occupying the position of distributees, against the plainest dictates of justice and right, because the testator might have attempted to emancipate a single slave of but little value, and forming a very inconsiderable part of the property disposed of by the will.

But the language of the statute does not justify the construction. It first declares emancipation of slaves by will, deed, or other conveyance, to be illegal; and it then proceeds to declare the instruments made and intended for that purpose, to be void; and adds that "the slave or slaves *thereby attempted or intended to be emancipated*, shall descend to, and be distributed among, the heirs at law of the testator," as if he had died intestate. This latter clause shows the true intent of the statute to be that the will should be void only as to "the slave or slaves thereby attempted to be emancipated."

The next objection to the will is, that the emancipation of the slaves Mary and Pillow, and the acts required to be done by the residuary legatee in their behalf, and in consequence of their emancipation, were conditions precedent to the vesting of the estate bequeathed in the residuary clause; and as they are illegal and void, that the estate, which is dependent upon their taking effect, must fail.

With respect to the slaves Mary and Pillow, it is to be observed, that the will does not require or authorize any act to be done by

Lucius to emancipate them; but it appears to have been the intention of the testator to set them free *by the will.* It is true, the residuary clause gives all the residue of his estate to Lucius; but this is qualified by the words " not herein particularly disposed of." And he immediately adds, " I will that Pillow and Mary are to be free, and are to have five hundred dollars each, when they arrive at the age of eighteen years." It appears, from the absence of any expression indicating that Lucius was to do any act by which they were to be set free, and from his positive declaration that they were to be free, that they were intended to be made free by mere force of the will, and at the time it went into effect. But whether they were to be free at that time, or when they should arrive at eighteen years of age, it is plain that their freedom did not depend on the act of Lucius, but was intended to be conferred by the will itself. It is, therefore, clear that the emancipation of these slaves was not one of the " uses and trusts" upon which the estate was bequeathed to Lucius, much less was it a condition precedent to the vesting of the estate in him. But there are certain things specified to be done by Lucius, or by his father during his minority, in relation to the slaves, which could not be done by the testator, and which had to be committed to some other person after his death. These were: to pay the slaves five hundred dollars each on their reaching eighteen years of age; they were to remain under the care of Lucius's father until he came of age, and were not to leave the family or be under overseers; that Mary was to be made a seamstress, and Pillow, a barber; and that Lucius was to take care of Mary's offspring during his lifetime, they being declared free by the will. After stating these particulars, he adds that " if Lucius and his father should do with the boy Pillow and girl Mary as herein willed and *expressed,* the gift to him of the estate, to be good and absolute;" but if they should fail, that " the property so bequeathed to Lucius" should be equally divided between other relations, they paying five hundred dollars to Mary and Pillow. He further adds that if Lucius should die before becoming of age, " then the property given and bequeathed to him," should go to his nephew William, upon the same conditions as to Lucius.

It is manifest from these provisions, that a present estate in the property embraced in this residuary clause, other than the slaves

Mary and Pillow, was intended to be given to Lucius, requiring of him and his father the performance of certain acts for their welfare. These he refers to as "the uses and trusts" "herein willed and expressed." They must necessarily be done in future, and if performed, "*the gift to him of the estate*" was to be absolute, but to be defeated if Lucius and his father should fail to perform them. They were continuous in their nature, and the estate was subject to forfeiture at any time when a failure to perform the acts required should take place; but nevertheless the estate vested subject to such condition. And we think it very clear that the performance of these acts was a condition subsequent. 1 Jarman on Wills, 801. Nor is this changed by the fact that the estate is limited over to another legatee in the event of the non-performance of the conditions subsequent by the original legatee. For the bequest vested in Lucius immediately, subject to be divested upon the happening of the contingency. 1 Roper Leg. 513 (1st Am. edit.)

But it is again insisted, that the bequest to the residuary legatee was a part of the illegal scheme to emancipate the slaves, and was made for the purpose of carrying out that scheme; and as the emancipation is void, that which was accessory to it is void or must fail.

This objection would be fatal to the bequest if the act of emancipation had been required to be performed by the legatee, or if the emancipation had been made to depend upon the performance of the acts required to be done by the legatee for the benefit of the slaves. But, according to the view we take of the will, the emancipation was intended to take effect, whether these subsequent acts for the benefit of the slaves were performed or not. And that was the act which the law renders illegal. It is true that the invalidity of that act rendered the performance of the conditions subsequent annexed to the estate impracticable by the legatee. But in order to render the residuary bequest void for illegality, it would be necessary to show that the emancipation depended upon the performance of the acts required to be done by the legatee. In the case of *Lewis* v. *Lusk*, 35 Miss. 401, the pecuniary bequest to the Colonization Society was to be paid after the bequest of the slaves for emancipation should take effect; and it was held, that the pay-

ment of the money *depended* on the emancipation, and failed for that reason, with the attempted emancipation.

The general rule is, that a bequest of an estate upon condition which is void, vests the estate in the legatee discharged of the condition. To this there is an exception, where the bequest is to a mere trustee without any beneficial interest in him; in which case, if the trust be illegal and void, there is a resulting trust to the heir. *Lusk* v. *Lewis*, 32 Miss. 297. But if the circumstances show that a benefit was intended to be conferred on the legatee in such a case, he will take the estate absolutely. Ib. *Weathersby* v. *Weathersby*, 13 S. & M. 685.

In this case, it is evident that the legatee is something more than a mere trustee. He was the nephew of the testator, and the property left to him by the will was worth about $35,000. That appears to be greatly disproportioned to the small duties towards the slaves required of him by the will, and the bequest of· so large an amount of property to him, affords the strongest evidence that a material part of his purpose was to make the legatee the subject of his special bounty. Therefore, although the performance of the acts by the legatee consequent upon the emancipation, is very stringently enjoined by the will, it cannot be held to be the sole or even the main purpose of the testator, in bequeathing so large an estate to his nephew. And as the emancipation was to take place, and, if legal, would have taken place, whether the subsequent acts required of the legatee had been performed or not, the condition annexed to the estate of the legatee cannot be considered as a " trust or arrangement" " to accomplish emancipation," within the prohibition of the statute; but a condition, the performance of which depended upon the emancipation of the slaves, which the law has prevented from taking effect. In such a case, the condition being void, and the legatee being not a mere naked trustee, but having a beneficial interest in the estate in his own behalf, takes the estate absolutely. *Lusk* v. *Lewis, supra.*

It follows from these views of the case, that the decree holding the entire residuary clause of the will to be void, is erroneous, except so far as it emancipates the slaves Mary and Pillow. The decree is, therefore, reversed, and the petition is dismissed, except

as to the slaves Mary and Pillow; in which respect it is affirmed, and the cause is remanded for further proceedings upon the petition as to those slaves.